413 A.2d 693

COMMONWEALTH of Pennsylvania

v.

**John ANDERJACK, Appellant.**

Superior Court of Pennsylvania.

Submitted April 12, 1979.

Filed Oct. 26, 1979.

336

Patrick McFalls, Assistant Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before VAN der VOORT, SPAETH and WATKINS, JJ.

SPAETH, Judge:

On September 22, 1977, appellant was arrested and charged with theft by unlawful taking, receiving stolen property, unauthorized use of an automobile, aggravated assault, resisting arrest, recklessly endangering another person, and possession of instruments of crime. On January 4, 1978, appellant entered pleas of guilty to the charges of theft by unlawful taking, resisting arrest, recklessly endangering another person, and possession of instruments of crime.[1] The Commonwealth dropped the other charges. On January 10, 1978, appellant was permitted to withdraw his guilty pleas. All of the charges were reinstated and a jury trial was held on March 7, 1978.[2] The jury found appellant guilty of unauthorized use of an automobile, resisting arrest, and recklessly endangering another person, and not guilty of

1.  Appellant was sentenced to a total of one to five years in prison. He was also given a six year term of probation to begin at the end of the prison sentence.

2.  The trial court granted the Commonwealth's motion to dismiss the charge of theft by unlawful taking before trial.

the other charges. Post-verdict motions were denied and appellant was sentenced to eleven and one-half to twenty three months in prison. On this appeal he contends: 1) that the evidence was insufficient to sustain his conviction of resisting arrest;[3] 2) that the lower court erred in not declaring a mistrial when a prosecution witness testified that appellant had refused to sign a waiver of rights form; and 3) that the Commonwealth did not properly reinstate the charges that had been dropped when appellant pleaded guilty.

–1–

When considering a claim that the evidence was insufficient to sustain a conviction, "we first accept as true all the evidence upon which the finder of fact could properly have reached its verdict, and then, after giving the Commonwealth the benefit of all reasonable inferences arising from that evidence, we ask whether the evidence and the inferences arising from it are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crimes of which he has been convicted." *Commonwealth v. Steward*, 263 Pa.Super. 191, 199, 397 A.2d 812, 815–16 (1979); *see Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978); *Commonwealth v. Madison*, 263 Pa.Super. 206, 397 A.2d 818 (1979). Regarded in this light, the evidence in support of the jury's conviction of appellant for resisting arrest may be summarized as follows:

At approximately 6:20 p. m. on September 13, 1977, Detective John Flaherty of the Allegheny County Police was driving his car near the corner of 9th and Carson Streets. He saw appellant driving a 1968 green Plymouth sedan east on Carson Street; appellant was driving erratically and

3. In his brief on this appeal appellant also argues that the evidence was insufficient to sustain guilty verdicts to the charges of receiving stolen property, aggravated assault, and possession of instruments of crime. As the jury found appellant *not guilty* of those charges, we are constrained to agree with his argument. We do not understand, however, why he has made it. Appellant has made no argument on this appeal with respect to the sufficiency of the evidence to sustain his convictions of those crimes of which the jury found him guilty, except for the conviction of resisting arrest.

collided with the rear of another car. Detective Flaherty, who was dressed in plainclothes, walked over to appellant, identified himself as a police officer, and asked if appellant needed help. Appellant looked at him, smiled, put his car in reverse, backed it up a few feet, shifted into drive, and sped away. To avoid being hit, the detective fell to the ground. He got up, ran back to his car, and drove after appellant. Appellant led the detective on a chase through back streets for approximately two miles until he was forced to stop behind some traffic at a red light. The detective caught up with appellant while he was stopped at the light, parked his car behind appellant's car, and approached on foot. He leaned into the open window on the driver's side, showed appellant his badge, identified himself, and told appellant to turn off the engine. When appellant did not turn off the engine, the detective reached into the car with his right hand in an attempt to turn off the engine himself. Appellant shifted the car into reverse, rammed the detective's car, shifted back into drive, and sped away. The detective was thrown to the ground and suffered a broken tooth; also, he had to scramble out of the way of appellant's car while on the ground to avoid being run over as appellant turned his car sharply to the left. The detective gave up his chase and called headquarters with a description of appellant and the car. On September 22, 1977, the detective saw appellant walking along a street, advised him of his rights, and arrested him. Later that day appellant told the detective that he was sorry if he had hurt him and that he did not mean to.[4]

The crime of resisting arrest is defined as follows: "A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public

4. There was also evidence that the car appellant was driving had recently been taken from its owner without the owner's permission. This evidence was relevant to appellant's conviction for unauthorized use of an automobile but we have not stated it since appellant has raised no claim as to its sufficiency. See note 3 supra.

servant or any one else, or employs means justifying or requiring substantial force to overcome the resistance." Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 5104 (1973).

In arguing that the evidence was insufficient, appellant contends that evidence of mere flight to avoid arrest is not sufficient to support a conviction of resisting arrest. In support of this argument he cites this court's decision in *Commonwealth v. Meo*, 233 Pa.Super. 483, 334 A.2d 748 (1975). In that case the defendant drove away from the police after they had signalled him to stop and, after a brief chase, abandoned his car and ran away on foot. When apprehended, he was sitting in a nearby house. He was taken into custody without any resistance. In holding the evidence insufficient, this court stated that the defendant's "act of 'running away' from the police, both in his car and later, on foot" were not violations of the resisting arrest provision of the 1939 Penal Code. *Id.*, 233 Pa.Super. at 487, 334 A.2d at 749; *see* Act of June 24, 1939, P.L. 872, § 314, 18 P.S. § 4314 (1963), superseded by Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 5104 (1973).

While section 5104 of the Crimes Code, under which appellant was charged, differs from section 4314 of the 1939 Penal Code,[5] still it appears that evidence of mere flight to avoid arrest would not alone be enough to support appellant's conviction. However, the evidence went beyond evi-

5. Section 4314 of the 1939 Penal Code provided:
   Whoever knowingly, wilfully and forcibly obstructs, resists or opposes any officer or other person duly authorized, in serving or attempting to serve or execute any legal process or order, or in making a lawful arrest without warrant, or assaults or beats any officer or person, duly authorized, in serving or executing any such legal process or order or for and because of having served or executed the same; or in making a lawful arrest without warrant; or rescues another in legal custody; or whoever being required by any officer, neglects or refuses to assist him in the execution of his office in any criminal case, or in preservation of the peace, or in apprehending and securing any person for a breach of the peace, is guilty of a misdemeanor, and on conviction, shall be sentenced to imprisonment not exceeding one year, or to pay a fine not exceeding five hundred dollars ($500), or both.

dence of mere flight to avoid arrest. Specifically, as stated above, the evidence demonstrated that when Detective Flaherty approached appellant the second time, and identified himself and tried to turn off the engine of appellant's car, appellant backed up the car while the detective's arm was inside it, and sped away, throwing the detective to the ground. This evidence was no doubt evidence of flight to avoid arrest, but it was also evidence that appellant had "create[d] a substantial risk of bodily injury" to the detective, and as such it was sufficient to support appellant's conviction for resisting arrest. *Cf.* Model Penal Code, § 242.2, Commentary to Tentative Draft No. 8 (conviction warranted where circumstances of flight expose pursuing officers to substantial danger).

–2–

–a–

During cross-examination by appellant's counsel of Detective James Morton, one of the officers assigned to investigate appellant's case, the following exchange occurred:

Q. At what time was Mr. Anderjack brought to your office on the 22nd, the day of the arrest?

A. I believe it was approximately 6:00 p. m. or around 6:00 p. m.

Q. Did you have any conversation with him?

A. Briefly, yes.

Q. What was the nature of that conversation?

A. We advised him of the charges and read—

Q. Let met interrupt you right there. When you say the charges, did you detail which charges you are referring to? Did you tell him he was under arrest for aggravated assault?

A. Yes.

Q. Did you tell him any information relating to the nature of the incident?

A. Yes, we did. We explained what we had on the case to him and advised him of his rights and gave him a waiver of rights which he refused to sign.

N.T. 95–96.

Appellant's counsel moved for a mistrial. The trial judge denied the motion but at once instructed the jury:

THE COURT: Members of the jury, as to the latter part of the witness's answer to the last question about the defendant's refusal to sign a waiver of rights form, the court would ask you to disregard that portion of it, that is, he may have refused to sign this rights form because there would be no obligation on him or anyone else to sign such a form. And if the defense, as was indicated here at Side Bar would be making a motion to strike that part of the answer, the motion would be granted by the court and the jury would be instructed to disregard that portion of the answer and not to take any adverse inferences from it.

N.T. 102–03.

Appellant's argument proceeds in two steps: he equates the reference to his refusal to sign a waiver of rights form to a reference that he remained silent at the time of his arrest, and then contends that the prejudice created by the reference was not removed by the court's cautionary instruction.

–b–

■ It is settled that it is reversible error to admit evidence of an accused's silence at the time of his arrest. *Commonwealth v. Easley*, 483 Pa. 337, 396 A.2d 1198 (1979); *Commonwealth v. Greco*, 465 Pa. 400, 350 A.2d 826 (1976); *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590 (1973); *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972). "The prohibition of any reference to an accused's silence reflects the court's desire that an accused not be penalized for exercising his constitutional rights." *Commonwealth v. Greco, supra* 465 Pa. at 404, 350 A.2d at 828; *see Commonwealth v. Stafford, supra.* Even this error, however, may in some cases be cured by a cautionary instruction. *See Commonwealth v. Singletary*, 478 Pa. 610, 387

A.2d 656 (1978); *Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976); *Commonwealth v. Quartman,* 253 Pa.Super. 460, 385 A.2d 429 (1978); *Commonwealth v. Williams,* 252 Pa.Super. 435, 381 A.2d 1285 (1977).

In *Commonwealth v. Maloney, supra,* the Commonwealth elicited testimony from an investigating officer that the defendant has refused to make a statement when arrested. No objection was made to this testimony. Later, the Commonwealth elicited testimony that the defendant had been warned of his rights and that no statement had been taken from him. This time the defense objected and moved for a mistrial. The trial judge denied the motion but immediately instructed the jury that the defendant had no duty to give a statement and that they should disregard the evidence. The trial judge included a similar instruction in his charge. On appeal, Mr. Justice EAGEN, speaking for two other members of the Court, stated:

> In order that there will be no confusion henceforth, we now specifically rule that in Pennsylvania adequate instructions under some circumstances may cure error of the nature here complained of. Initially, whether the harm can be removed by curative instructions will be within the sound discretion of the trial judge and his determination will be subject to appellate review. In making this decision, the following will be important considerations but not necessarily exclusive: (1) the nature of the reference, particularly, whether it was a specific comment on the accused's silence at trial or at the time of arrest or whether it was . . . merely a reference to the fact that incriminating evidence of the Commonwealth was undenied or uncontradicted; and (2) whether the accused's silence was exploited by the district attorney.

*Id.* 469 Pa. at 349, 365 A.2d at 1241.

In *Commonwealth v. Williams, supra,* this court, after discussing *Maloney,* stated that "we believe that our appellate courts have found any reference to an accused's silence after arrest to be reversible error unless the trial court gives a prompt and adequate cautionary instruction." 252 Pa.Su-

per. at 446, 381 A.2d at 1291; *See Commonwealth v. Zellner,* 268 Pa.Super. 59, 407 A.2d 436 (1979); *Commonwealth v. Quartman, supra.*

In *Commonwealth v. Singletary, supra,* the Supreme Court was again confronted with the question of whether a cautionary instruction would cure a testimonial reference to an accused's silence. In that case the prosecution asked the defendant the following questions:

Q. And you went down to the Police Administration building?

A. That's correct.

Q. And on advice of counsel, you made no statement concerning the case.

The defendant's motion for a mistrial was denied but the trial judge immediately instructed the jury that the defendant had no duty to make any statement, that what he did was on advice of counsel, that no inference should be drawn from his silence, and that the jury was to disregard the testimony. In holding that the cautionary instruction was not sufficient to cure the error, a majority of the Supreme Court stated that the earlier decision in *Commonwealth v. Maloney, supra,* was not controlling, noting in a footnote that *Maloney* had not commanded the vote of a majority. The Court went on to distinguish *Maloney,* saying that in *Maloney* the reference to the defendant's silence had been introduced initially without objection and the cautionary instruction had been more decisive.

It is perhaps arguable that *Singletary* overruled the plurality opinion in *Maloney* and with it, undercut this court's statement in *Williams.* However, given the Court's failure to say in *Singletary* that it was overruling *Maloney,* and its express distinguishing of *Maloney,* the better view would seem to be that both *Maloney* and *Williams* retain their authority. Thus, in *Commonwealth v. Zellner, supra,* this court stated that "[w]e do not read the cases decided after *Maloney* to have negated the plurality's position. Nor do we comprehend any rationale behind the argument that cautionary instructions, in the right circumstances, cannot cure

the type of harm of which appellant complains." *Id.*, 268 Pa.Super. at 65, 407 A.2d at 439.[6]

■ The rule of *Maloney* and *Singletary*, when they are read together, is that in deciding whether a cautionary instruction was sufficient, we must closely scrutinize the facts of the specific case, with particular attention to the following: 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instruction.

–c–

■ First: The reference to appellant's silence was the testimony that he had refused to sign a waiver of rights form. Such a reference may indicate to the jury that the defendant was uncooperative in some way. Reference to a defendant's silence when confronted with an accusation, however, may indicate to the jury that the defendant was guilty, on the theory of tacit admission—that when accused, an innocent person will protest his innocence. *See Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 85, 223 A.2d 296, 298 (1966) (tacit admission by defendant's silence when accused during police interrogation represents improper restraint on right to remain silent). We do not suggest that the reference to appellant's refusal to sign a waiver of rights form was not to some extent prejudicial. We recognize that it was prejudicial. We only say that in assessing the degree of prejudice, we should recognize that the reference was an implicit rather than explicit statement that appellant had chosen to remain silent. *Cf. Commonwealth v. Ross*, 403 Pa.

6. In *Zellner*, the cautionary instruction was at the end of the trial, long after the jury had heard the prejudicial testimony, and without defense counsel requesting the instruction. The author of this opinion dissented on the ground that in those circumstances, the instruction may have created more prejudice than it cured. *Commonwealth v. Zellner, supra* (SPAETH, J., dissenting). Thus, the dissent was not to the majority's statement of the law but only to the application of the law to the particular facts.

358, 169 A.2d 780 (1961) (reference to fact that Commonwealth's evidence at trial was uncontradicted).[7] In addition, the degree of prejudice here was to some extent weakened by the fact that the jury had previously heard testimony that appellant was not always silent but had made a statement to Detective Flaherty that he was sorry if he had hurt him.

Second: The reference was not elicited by the district attorney or by the court but by appellant's counsel on cross-examination of a Commonwealth witness. It is true that the reference was not purposely elicited by counsel. Also, Detective Morton's statement that appellant refused to sign the waiver of rights form was not directly responsive to counsel's question. It cannot be said, however, that the detective's statement was totally foreign to the area that counsel seemed to be asking about. Counsel's questions seemed to concern the police processing of appellant after his arrest and what the detective had told appellant. ("Did you tell him any information relating to the nature of the incident?") The detective answered responsively, when he said, "We explained what we had on the case to him and advised him of his rights." His further answer, "[And we] gave him a waiver of rights which he refused to sign," seems to have been nothing more than an afterthought, added to complete the more responsive portion of his answer. Appellant's counsel should have been aware of the risk he was running. Only two questions back, when he asked the detective, "What was the nature of that conversation?" the detective had answered, "We advised him of the charges and read—", whereupon counsel had interrupted.

From a defendant's point of view, the prejudice may be the same no matter how it is provoked, whether intentionally by the district attorney or as in this case, recklessly by

7. In his opinion in *Commonwealth v. Maloney, supra,* Justice EAGEN specifically mentioned the situation in *Commonwealth v. Ross, supra,* as one where the reference was not as prejudicial as an explicit reference to the accused's silence. 469 Pa. at 349, 365 A.2d at 1241.

defense counsel. *See Commonwealth v. Greco, supra.*[8] Nevertheless, how the reference to the defendant's silence is elicited may be an important fact in a close case, for if elicited by the district attorney, this court may reverse not only because of the prejudice but also in order to express our disapproval of the district attorney's misconduct. Indeed, in *Commonwealth v. Singletary, supra,* the reference to the defendant's silence was by the district attorney, who should have known better than to make such a statement. Here, however, there is no evidence of misconduct, either on the part of the district attorney, or on the part of the witness, who made only a single statement, added as an afterthought to complete the more responsive portion of his answer.

Third: In *Commonwealth v. Stafford, supra,* the defendant himself, in response to questions by his attorney on direct examination, brought out the fact of his silence. The district attorney commented on his silence in his closing argument, and told the jury to weigh it in their deliberations. In reversing, the Supreme Court stated "[t]hat the appellant himself brought his silence, at the time of his arrest, to the jury's attention does not justify the prosecutor's grasping the opportunity to suggest that appellant's guilt be inferred from his silence at that time." 450 Pa. at 263, 299 A.2d at 596. *But see Commonwealth v. Kahley,* 467 Pa. 272, 356 A.2d 745 (1976). In this case the only reference to the refusal to sign the waiver form was that elicited by appellant's counsel. The district attorney did not conduct a redirect examination of the witness on the reference, and he

8. In *Greco,* the Commonwealth attempted to excuse the fact that its questioning had led to the reference to the accused's silence by arguing that it did not intend that the officer should make such a reference but expected a different answer. In holding that this was not an excuse the Supreme Court noted that the prejudice occurred irrespective of the fact that the district attorney did not intend to elicit the officer's answer. The Court echoed the words of Judge JACOBS who, in writing the opinion for this court, had stated that "[t]he fact that the reference may have been inadvertent or unintended does not lessen the prejudice caused by the introduction of the testimony." *Commonwealth v. Greco,* 227 Pa.Super. 19, 323 A.2d 132 (1974), *aff'd,* 465 Pa. 400, 350 A.2d 826 (1976).

made no statement with respect to it in closing argument. This restraint not only shows that there was no prosecutorial misconduct, but also diminishes at least to some extent the prejudice caused by the reference.

Fourth: The cautionary instruction was given promptly, only minutes after the reference. When an instruction is required, it is far better to give it at once than only much later. In giving the instruction, the trial judge was careful not to suggest in any way that appellant's refusal to sign the waiver of rights form was the same as an exercise of his right to remain silent. The judge did not try to explain what appellant's refusal involved. This was an exercise in good judgment, for if an explanation had been given, the jury might have been more prejudiced. Finally, the instruction was unequivocal in its statement that appellant had no obligation to sign the form and that the jury should disregard and base no adverse inference on his refusal to sign it.

After considering each of the foregoing four factors, we cannot say that the trial judge erred in denying appellant's motion for a mistrial.

–3–

In an oral motion at the beginning of the trial, appellant argued that the Commonwealth did not properly reinstate the charges of receiving stolen property, unauthorized use of an automobile, and aggravated assault, which it had dropped when appellant pleaded guilty to the other charges on January 4, 1978. The Commonwealth argues now, as it did to the trial judge, that there was a plea bargain and that the charges were dropped only because appellant had agreed to plead guilty to the other charges. When appellant was permitted to withdraw his guilty plea, according to the Commonwealth, the plea bargain ended, and the other charges were automatically reinstated.

We shall not decide whether the charges were properly reinstated. In his post-verdict motions appellant did not

claim any impropriety in their reinstatement. His claim that "the learned trial court erred in denying Defendant's motions made during the trial" was not sufficiently specific to preserve any claim for appellate review. *See* Pa.R. Crim.P., Rule 1123; *Commonwealth v. Waters*, 477 Pa. 430, 384 A.2d 234 (1978).

Affirmed.

VAN der VOORT, J., files a concurring and dissenting opinion.

VAN der VOORT, Judge, concurring and dissenting:

Although I agree that the reference to appellant's refusal to sign a waiver of rights form was potentially prejudicial, I believe that the prejudice would have come from the jury's inference that appellant had been uncooperative with the police, and I believe that the trial court's cautionary instruction was sufficient to negate any such prejudice. The offending statement of the witness was: "We explained what we had on the case to him and advised him of his rights and gave him a waiver or rights which he refused to *sign*." (Emphasis added). The jury would not necessarily have inferred from this statement that appellant had refused to *talk* to the police, or that one of the rights which the police wanted appellant to waive in writing was the right to remain silent.

I disagree with the majority opinion in that I would not characterize defense counsel's conduct as "reckless". Counsel's question was: "Did you tell him [appellant] any information relating to the *nature of the incident*?" (Emphasis added). The volunteered information that appellant refused to sign a waiver of rights form was an unlikely response to an inquiry concerning what the police told appellant about the nature of the crime. I believe that counsel was not reckless in asking that particular question or in failing to anticipate the response.