474 A.2d 1151

**COMMONWEALTH of Pennsylvania**

v.

**Martin R. GBUR, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1983.

Filed April 6, 1984.

Petition for Allowance of Appeal Denied July 23, 1984.

Harry Otto Falls, New Castle, for appellant.

Charles S. Hersh, Assistant District Attorney, Mercer, for Commonwealth, appellee.

Before ROWLEY, WIEAND and HESTER, JJ.

ROWLEY, Judge:

This is a direct appeal from judgment of sentence entered on January 25, 1982, in the Court of Common Pleas of Mercer County. Following a trial by jury, appellant was convicted of involuntary manslaughter and homicide by vehicle. Post-trial motions were denied and appellant was sentenced to one to two years imprisonment.

On appeal, appellant claims that the trial court erred: 1) in allowing the introduction of evidence of intoxication at appellant's trial on the charges of involuntary manslaughter and homicide by vehicle, after a charge of driving under the influence had been dismissed; and 2) in not granting a mistrial when evidence of the accused's silence at the time of his arrest was admitted at trial. We find appellant's allegations of error to be without merit and accordingly, we affirm the judgment of sentence.

I.

On March 31, 1980, appellant was involved in a two-vehicle collision on Route 58 in Mercer County. As a result of this incident, appellant was charged with driving under the influence. Upon the death of the driver of the other vehicle, appellant was additionally charged with involuntary manslaughter and homicide by vehicle. Subsequently, the charge of driving under the influence was dismissed because the Commonwealth failed to bring appellant to trial within the time prescribed by Pa.R.C.P. 1100.

During the trial of this case, State Trooper Edwin Surrena, a witness for the Commonwealth, testified that appellant appeared to be driving under the influence of alcohol at the time of the collision herein involved. Appellant's objection to the introduction of evidence of intoxication was overruled by the trial judge. Subsequently, additional intoxication evidence was introduced by the Commonwealth. On appeal, appellant contends that the Commonwealth was precluded from introducing intoxication evidence at the trial on the charges of involuntary manslaughter and homicide by vehicle, since the charge of driving under the influence had been dismissed prior to trial pursuant to Rule 1100. This claim is without merit.

In order to establish that a person is guilty of homicide by vehicle under 75 Pa.C.S.A. § 3732 (1977), the Commonwealth must prove beyond a reasonable doubt that the defendant "engaged in the violation of any law ... or ... ordinance applying to the operation or use of a vehicle or to the regulation of traffic ...". Under Pennsylvania law, the Commonwealth need not separately charge a person with a violation of the motor vehicle code in order to establish this element of the offense of homicide by vehicle. *Commonwealth v. Wilkinson*, 278 Pa.Super. 490, 495–96, 420 A.2d 647, 650 (1980). Thus, the Commonwealth properly attempted to prove that appellant violated a law in the operation of his vehicle by driving while intoxicated. Since the separate charge of driving under the influence was dismissed without a determination of appellant's guilt or

22

innocence, it had no bearing on the question whether appellant was guilty of homicide by vehicle.

## II.

At trial, during the direct examination of State Trooper Paul Matie by the district attorney, the following exchange transpired:

Q. Did you see the Defendant later on at the Greenville Hospital?

A. Yes, I did. After we cleaned the accident scene up, we proceeded to the hospital to talk to Mr. Gbur.

Q. Well, were you present when his rights were read to him?

A. Yes, sir, I read him his rights.

Q. Did you have any conversation with him after he was read his rights?

A. No. He said he wanted to talk to his attorney, and that he didn't want to talk.

(N.T. 31–32, November 12–13, 1980)

Appellant's counsel moved for a mistrial. After a side bar conference, the trial judge denied the motion and gave cautionary instructions to the jury. He explained that a person accused of a crime is entitled to be advised of his constitutional rights and, in addition, he said:

Now, what happened in this case, apparently, is because of the order in which the witnesses were called, Trooper Surrena testified that the *Miranda* Warnings were given and that the Defendant allegedly understood the Warnings, and that he did make some statements as to where he was going, you know, what route he may have been on prior to this occurrence. He apparently was on Interstate 80, although Trooper Surrena's recollection was not real vivid concerning that. The District Attorney then with Trooper Matie asked Trooper Matie whether or not *Miranda* Rights—whether or not he was present when the Miranda Rights were given, and he stated, "Well, I gave the *Miranda* Rights." He then was asked what occurred

following that. Trooper Matie then responded as you recall that the Defendant said that he did not desire to speak and wanted to talk to an attorney. Now, that is an absolute Constitutional Right that the Defendant had to not talk to Trooper Matie or any other police officer further concerning this and to talk to Trooper Matie or any other police officer further concerning this and to talk to his own attorney. What the District Attorney apparently was wanting to get out of Trooper Matie at that moment was a repetition of what was allegedly said later by the Defendant concerning traveling down Interstate 80 and going to his or wanting to go to his in-laws' home, and Trooper Matie inadvertently said that the man wanted to talk to his attorney and did not want to talk at that time. You must disregard then and strike from your recollection any refusal of the Defendant to testify or give a statement rather to the officer. As I said to you before, he has an absolute Constitutional Right not to talk to the officer. He has an absolute right to talk to his attorney and decide whether he will talk to the officer at any later time. And to penalize the Defendant in any way for exercising that Constitutional Right has the effect of taking the Constitutional Right away from him; and we certainly cannot do that. So, I'm cautioning you in the most strong language that you should disregard the last answer inadvertently given by Trooper Matie concerning what this man did after his Constitutional Rights were given to him while he was in the hospital ...

(N.T. 42–43, November 12, 13, 1980).

Appellant argues that his constitutional rights were violated by the testimonial reference to the exercise of his right to remain silent and that the court's cautionary instructions were insufficient to cure the resulting prejudice.

It is a clear violation of the accused's constitutional right against self-incrimination to make a reference at trial to his silence while in police custody. *Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624–25 n. 37, 16 L.Ed.2d 694, 720 n. 37 (1966); *Commonwealth v. Single-*

24

*tary,* 478 Pa. 610, 611, 387 A.2d 656 (1978). Not every such reference, however, requires a new trial. *Commonwealth v. Maloney,* 469 Pa. 342, 349, 365 A.2d 1237, 1241 (1976); *Commonwealth v. Quartman,* 253 Pa.Super. 460, 385 A.2d 429 (1978). Prompt and adequate cautionary instructions can cure what might otherwise be reversible error. *Commonwealth v. Maloney, supra; Commonwealth v. Williams,* 252 Pa.Super. 435, 446, 381 A.2d 1285, 1291 (1978). Initially, the question whether the harm can be removed by curative instructions is within the sound discretion of the trial judge. However, his determination is subject to appellate review. *Commonwealth v. Maloney,* 469 Pa. at 349, 365 A.2d at 1241. If the reference to the accused's silence is of a nature that would seriously compromise the jury's objectivity and is likely to deprive the accused of a fair trial, curative instructions are inadequate and a new trial is required. *Commonwealth v. Brown,* 489 Pa. 285, 298, 414 A.2d 70, 76 (1980).

In *Commonwealth v. Anderjack,* 271 Pa.Super. 334, 413 A.2d 693 (1979), this court set forth the following four factors, to be considered in determining whether cautionary instructions can cure a reference to the accused's silence: 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instruction. *Id.,* 271 Pa.Superior Ct. at 344, 413 A.2d at 698.[1] We will address these factors seriatim.

1. In *Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976), a plurality of the Supreme Court decided that adequate cautionary instructions could cure a reference to the accused's silence. In analyzing the prejudice resulting from the reference, reviewing courts were directed to consider: 1) the nature of the reference; and 2) whether the accused's silence was exploited by the district attorney. *Id.,* 469 Pa. at 349, 365 A.2d at 1241. In *Commonwealth v. Singletary,* 478 Pa. 610, 387 A.2d 656 (1978), however, a majority of the Court stated that *Maloney* did not necessarily rule the outcome of that case. In holding that the cautionary instructions in *Singletary* were insufficient to cure the error, the Court distinguished *Maloney* on its facts. *Id.,* 478 Pa. at 612, 387 A.2d at 657. However, in *Commonwealth v. Anderjack,* 271 Pa.Super. 334, 413 A.2d 693 (1979), this court concluded that *Singletary* did not overrule the principles set forth in *Maloney.*

■ The improper reference to appellant's silence in this case was State Trooper Matie's testimony that after appellant was informed of his rights, appellant stated that he wanted an attorney and didn't want to talk. It is evident that this testimony was prejudicial. We point out, however, that another witness, State Trooper Surrena, had already testified that after appellant was informed of his rights, he made statements to the police concerning the route he traveled on the night of the incident in question. (N.T. 21–22, November 12–13, 1980). Therefore, the degree of prejudice caused by the reference to appellant's silence in this case was lessened somewhat by the fact that the jury had previously heard testimony that he did not remain silent. *See Commonwealth v. Anderjack*, 271 Pa.Super. at 345, 413 A.2d at 699.

Secondly, the reference to appellant's silence was made in response to the district attorney's inquiry whether State Trooper Matie had a conversation with appellant after he was read his rights. The prosecutor informed the trial judge at side bar that Trooper Matie's answer was unexpected and that it was not purposely elicited. Rather, the prosecutor sought to elicit testimony referring to appellant's statements concerning the route he traveled prior to the automobile collision. Trooper Surrena had previously testified that appellant made statements after he was advised of his constitutional rights, and the prosecutor expected Trooper Matie to give similar testimony. Upon a thorough review of the record in this case, we are persuaded that Trooper Matie's answer was non-responsive and inadvertent.

We recognize that inadvertence does not lessen the prejudice caused by a reference to appellant's exercise of his right to remain silent. *See Commonwealth v. Greco*, 227 Pa.Super. 19, 323 A.2d 132 (1974) *aff'd* 465 Pa. 400, 350 A.2d 826 (1976). Nevertheless, instantly, there was no

Instead, this court stated that under certain circumstances, cautionary instructions could cure the prejudice resulting from a testimonial reference to the accused's silence. *See also, Commonwealth v. Zellner*, 268 Pa.Super. 59, 407 A.2d 436 (1979).

26

misconduct on the part of the district attorney, since he did not refer to the defendant's silence in any question directed to the officer or to any other witness. *See Commonwealth v. Zellner*, 268 Pa.Super. 59, 407 A.2d 436 (1979). *See also Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976) (proper cautionary instructions cured an improper reference to the accused's silence even though the district attorney referred to the accused's silence in his question to the police officer). Furthermore, the prosecutor did not exploit the reference to the accused's exercise of his right to remain silent by using it in his closing argument. *Compare Commonwealth v. Easley*, 483 Pa. 337, 396 A.2d 1198 (1979).

Appellant maintains that the Supreme Court's decision in *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982), controls the outcome of this case. In *Turner*, the Court held that a prejudicial reference to the accused's silence constituted reversible error warranting a new trial. The accused's silence referred to at trial in *Turner*, occurred prior to the giving of *Miranda* warnings. The United States Supreme Court has recently determined in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) that, as a matter of Federal Constitutional law, the use of pre-*Miranda* silence is permissible to impeach the defendant's exculpatory trial testimony. In *Turner*, however, the Pennsylvania Supreme Court chose to adopt a more restrictive position in holding that an improper reference to the accused's silence is impermissible, whether it occurs before or after *Miranda* warnings are given. *Commonwealth v. Turner*, 499 Pa. at 584, 454 A.2d at 540. Nevertheless, the Court said nothing to indicate that an improper pre-*Miranda* reference could not be cured by *adequate* cautionary instructions. Moreover, the facts in *Turner* are significantly different than those in the case at bar. In that case, the improper reference to the accused's silence was made by the district attorney during cross-examination of the defendant. The prosecutor was purposely attempting to emphasize to the jury the purported inconsist-

ency between the defendant's silence at the time of arrest and his testimony at trial. Under these circumstances, the improper reference could have significantly influenced the jury's objectivity, and thus, the Court determined that curative instructions did not render the error harmless. *Id.*, 499 Pa. at 584–85, 454 A.2d at 540. In the instant case, the improper reference could not have seriously prejudiced appellant in the eyes of the jury since there was previous testimony at trial that appellant did not remain silent after he was read his rights. In addition, the reference was an inadvertent slip by the witness that was not purposely elicited or exploited by the prosecutor. In this situation, adequate cautionary instructions by the trial judge could effectively eradicate any prejudice resulting from the improper reference. Indeed, our review of the record in this case convinces us that the prompt and careful cautionary instructions given by Judge Acker minimized the impact of the reference to the accused's silence so as to render it harmless. *See Commonwealth v. Story,* 476 Pa. 391, 410 n. 18, 383 A.2d 155, 165 n. 18 (1978).

Upon defense counsel's objection to the improper reference to the accused's silence at trial, the jury was immediately ushered out of the courtroom and a side bar conference was conducted at which Trooper Matie was questioned and counsel and the court discussed the effect of the improper statement. At the close of the conference, Judge Acker determined that the situation was governed by *Commonwealth v. Anderjack, supra.* Accordingly, the jury was recalled and Judge Acker immediately instructed them regarding the improper reference to appellant's silence. Appellant's counsel did not request that cautionary instructions be given. However, we find that the trial judge demonstrated prudent foresight in instructing the jury as he did. *Commonwealth v. Zellner,* 268 Pa. 59, 65, 407 A.2d 436, 439 (1979). The instructions were thorough, they were properly decisive and they were sufficient to overcome any prejudice that may have resulted from the improper remark. *See Commonwealth v. Singletary,* 478 Pa. 610, 387

28

A.2d 656 (1978); *Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976).

Judgment of sentence affirmed.

HESTER, J., concurs in the result.