J-S37003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LANA KAY ROE | |
| Appellant | No. 138 WDA 2015 |

Appeal from the Judgment of Sentence March 28, 2014
In the Court of Common Pleas of Greene County
Criminal Division at No(s): CP-30-CR-0000343-2012;
CP-30-CR-0000344-2012

BEFORE: GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED OCTOBER 13, 2016**

Appellant, Lana Kay Roe, appeals from the judgment of sentence entered in the Greene County Court of Common Pleas, following her jury trial convictions of first-degree murder and false reports to law enforcement authorities.[1] We affirm.

The relevant facts and procedural history of this case are as follows. Around June 2012, Appellant and her husband, Jason William Roe, moved to Daisytown, Pennsylvania, and befriended their neighbor, Cordele Patterson ("Victim"). Later that summer, Appellant and Mr. Roe experienced marital difficulties, which resulted in both parties moving out of their residence in

_____

[1] 18 Pa.C.S.A. §§ 2502(a) and 4906(a), respectively.

Daisytown. During the separation, and without Mr. Roe's knowledge, Appellant sold two of the couple's firearms. In early August 2012, Appellant and Mr. Roe reconciled and returned home to discover that someone had burglarized their home while they were away. Appellant contacted police and reported the incident. In her report, Appellant informed police that Victim had taken numerous items from the home including twelve firearms; however, only ten firearms were taken in the burglary. The two additional firearms listed in the report were the ones Appellant sold during her separation from Mr. Roe.

In the early morning hours of August 14, 2012, Mr. Roe took Victim to a cabin owned by the Brewer family. Mr. Roe allegedly took Victim there to hide because of the police report filed by Appellant. After dropping Victim off, Mr. Roe returned to Daisytown where he and Appellant went to Victim's home and started removing items that allegedly belonged to them. Appellant and Mr. Roe then drove Appellant's Jeep out to the cabin. On the way to the cabin, Appellant and Mr. Roe stopped at a True Value hardware store and purchased a 12-gauge shotgun as well as buckshot and birdshot ammunition. Appellant and Mr. Roe stopped again on the way to the cabin, so Mr. Roe could test-fire the shotgun. When Appellant and Mr. Roe reached the cabin, Mr. Roe told Appellant to go inside and get Victim. Appellant complied; and, as she returned from the cabin with Victim behind her, Mr. Roe shot Appellant in the face. Victim turned around and ran back into the

- 2 -

cabin, while Appellant ran to her Jeep and drove away. Mr. Roe chased Victim into the cabin and fatally shot Victim.

After Mr. Roe shot her, Appellant drove to a neighbor's house; the neighbor called the police and reported the shooting. Police and paramedics responded to the neighbor's house, and paramedics transported Appellant to Ruby Memorial Hospital in Morgantown, West Virginia. Police then proceeded to the cabin where they discovered Victim's body. Meanwhile, Mr. Roe fled from the cabin on foot and borrowed a white van from a nearby relative. Mr. Roe subsequently drove the van to West Virginia, where West Virginia authorities apprehended him. In the evening of August 14, 2012, Pennsylvania police interviewed Appellant at the hospital. At the time, police regarded Appellant as a victim. On August 15, 2012, police conducted a second interview of Appellant at the cabin where the shooting occurred. Police still considered Appellant a victim at this time. After learning of various inconsistencies in Appellant's account of the shooting, police interviewed Appellant again on August 24, 2012. This time police suspected Appellant's involvement in Victim's shooting, so Corporal Jeremy Barni read Appellant her ***Miranda***[2] rights prior to the interview. After Appellant waived her rights, police questioned Appellant for over two hours. During this time, Appellant admitted various facts that implicated her involvement in Victim's

---

[2] ***Miranda v. Arizona***, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

murder. Appellant invoked her right to an attorney at the conclusion of the interview.

On September 20, 2012, the Commonwealth charged Appellant with criminal homicide and false reports to law enforcement authorities at two separate dockets. The Commonwealth also charged Mr. Roe with criminal homicide and aggravated assault. On October 23, 2012, Appellant filed an omnibus pre-trial motion in which she asked the court to sever her case from Mr. Roe's case for purposes of trial. After a hearing, the court agreed to sever Appellant's false reports to law enforcement authorities charge on March 12, 2013, based on concerns that it would cause jury confusion in Mr. Roe's case. On November 5, 2013, Appellant proceeded to a joint jury trial with Mr. Roe on the criminal homicide charge. The trial resulted in Mr. Roe's conviction of first-degree murder on November 15, 2013. That same day, the court declared a mistrial with respect to Appellant's criminal homicide charge because the jury was unable to reach a verdict.

Following the mistrial, the court set a new trial date for Appellant's case. On November 27, 2013, the Commonwealth filed a motion to consolidate Appellant's criminal homicide charge and false reports to law enforcement authorities charge. In its motion, the Commonwealth argued the risk of jury confusion no longer existed due to Mr. Roe's conviction. The court granted the motion on December 10, 2013. On January 6, 2014, Appellant filed a motion to sever the charges, which the court denied on

January 13, 2014. Appellant proceeded to a jury trial on March 24, 2014. During trial, the Commonwealth asked Corporal Barni a question, which resulted in a reference to Appellant's request for an attorney. Immediately after the reference, Appellant's counsel moved for a mistrial. The court denied the mistrial, but it did give a cautionary instruction about the reference to the jury. On March 28, 2014, the jury convicted Appellant of first-degree murder and false reports to law enforcement authorities.

Immediately following Appellant's conviction, the court sentenced Appellant to life imprisonment without the possibility of parole for the first-degree murder conviction, and a concurrent term of one (1) to two (2) years' imprisonment for the false reports to law enforcement authorities conviction. Appellant timely filed a post-sentence motion on March 31, 2014, which the court denied on December 22, 2014. Appellant timely filed a notice of appeal on January 21, 2015.[3] The court did not order Appellant

_____

[3] "A direct appeal in a criminal proceeding lies from the judgment of sentence." **Commonwealth v. Patterson**, 940 A.2d 493, 497 (Pa.Super. 2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008). If a defendant in a criminal case files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion. Pa.R.Crim.P. 720(A)(2)(a). The denial of a timely post-sentence motion becomes the triggering event for filing a notice of appeal. Pa.R.Crim.P. 720(A)(2). Generally, where a defendant timely files a post-sentence motion, the court shall decide the motion within 120 days of the filing; otherwise, the motion shall be deemed denied by operation of law. **See** Pa.R.Crim.P. 720(B)(3)(a). A clerk of courts' failure to enter an order stating a post-sentence motion has been denied by operation of law and to furnish the parties with a copy of the order, however, constitutes a
*(Footnote Continued Next Page)*

to file a concise statement of errors complained of on appeal pursuant to

Pa.R.A.P. 1925(b), and Appellant filed none.[4]

Appellant raises the following issues for our review:

> WHETHER…APPELLANT'S STATE AND FEDERAL DUE-PROCESS-RIGHTS TO A FAIR TRIAL WERE VIOLATED:

*(Footnote Continued)* ────────────

breakdown in the court system. ***Commonwealth v. Braykovich***, 664 A.2d 133, 138 (Pa.Super. 1995), *appeal denied*, 544 Pa. 622, 675 A.2d 1242 (1996). Such a breakdown warrants extension of the appeal period or the grant of an appeal *nunc pro tunc*. ***Id.*** Instantly, the record makes clear Appellant timely filed her post-sentence motion. The court did not hold a hearing or rule on the motion within 120 days (no extension was requested). Thus, the post-sentence motion was deemed denied by operation of law. Nevertheless, the clerk of courts failed to enter a Rule 720(B)(3)(c) order on behalf of the court, which constitutes a breakdown in the court system. ***See id.*** The trial court actually denied the post-sentence motion on December 22, 2014. Therefore, we will treat the December 22, 2014 order as a Rule 720(B)(3)(c) order solely for purposes of the date on which Appellant's appeal period began to run. Appellant timely filed her notice of appeal on January 21, 2015, within the 30-day appeal period, so we have no impediment to appellate jurisdiction. ***See Patterson, supra*** (stating appellate court can raise issue of jurisdiction *sua sponte*).

[4] Over one year after her appellate brief was filed on March 3, 2015, and while still represented by counsel of record, Appellant filed a *pro se* motion on April 4, 2016, to proceed on appeal separately from Mr. Roe (whose appeal is docketed at No. 130 WDA 2015 and separately listed at J-S37002-16). In the same motion, Appellant requested new counsel for her appeal. We deny the motion in its entirety. ***See Commonwealth v. Ellis***, 534 Pa. 176, 626 A.2d 1137 (1993) (proscribing hybrid representation). ***See also Commonwealth v. Jette***, 611 Pa. 166, 23 A.3d 1032 (2011) (reiterating rule that court will not consider *pro se* filings of defendant who is represented by counsel of record; stating that absent timely motion for change of counsel, in which appellant can demonstrate irreconcilable differences which preclude counsel from representing her, or timely petition for self-representation, or retention/appointment of new counsel, appellant must remain with current counsel through conclusion of appeal; in this context, "timely" means motion or petition must be filed before filing of counseled brief).

> A. WHEN THE TRIAL COURT CONSOLIDATED WITHOUT A HEARING APPELLANT'S CASES AND DENIED WITHOUT A HEARING APPELLANT'S MOTION TO SEVER AFTER THE PARTIES AGREED AND STIPULATED TO SEVERANCE IN EXCHANGE FOR WITHDRAWAL OF APPELLANT'S SUPPRESSION MOTION?
>
> B. WHEN THE TRIAL COURT DENIED APPELLANT'S MOTION FOR MISTRIAL AFTER THE COMMONWEALTH COMMENTED IN A LEADING QUESTION TO THE LEAD INVESTIGATOR DURING ITS CASE-IN-CHIEF ABOUT APPELLANT'S REQUEST FOR AN ATTORNEY AND SUBSEQUENT SILENCE?

WHETHER THE TRIAL COURT'S CURATIVE INSTRUCTION WAS SUFFICIENT TO SATISFY DUE PROCESS?

WHETHER THE JURY VERDICT IS SUPPORTED BY THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE?

(Appellant's Brief at 5).[5]

In issue 1(A), Appellant argues that prior to her first trial, the Commonwealth agreed to sever her criminal homicide charge and false reports to law enforcement authorities charge in exchange for Appellant's withdrawal of her suppression motion. Appellant avers the court implemented this agreement in the first trial, and it should have enforced the agreement in her second trial. Appellant further claims the temporal remoteness of the false police report and the homicide did not warrant

_____

[5] In Appellant's brief, counsel concedes the evidence was sufficient to support the jury's verdict. Counsel further concedes the jury's verdict was not against the weight of the evidence. Therefore, we will not address Appellant's third issue on appeal.

consolidation of the charges. Appellant concludes the court abused its discretion when it consolidated Appellant's charges without a hearing on either the Commonwealth's motion to consolidate or Appellant's motion to sever, and this Court should vacate her judgment of sentence, sever the charges, and remand for new, separate trials. We disagree.

Our standard of review for the denial of a severance motion is as follows:

> A motion for severance is addressed to the sound discretion of the trial court, and…its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.

***Commonwealth v. Mollett***, 5 A.3d 291, 305 (Pa.Super. 2010), *appeal denied*, 609 Pa. 686, 14 A.3d 826 (2011).

The Pennsylvania Rules of Criminal Procedure govern the joinder and severance of offenses as follows:

> **Rule 582. Joinder—Trial of Separate Indictments or Informations**
>
> **(A) Standards**
>
> (1) Offenses charged in separate indictments or informations may be tried together if:
>
> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>
> (b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).

### Rule 583. Severance of Offenses or Defendants

The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim. 583. "Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." *Commonwealth v. Dozzo*, 991 A.2d 898, 902 (Pa.Super. 2010), *appeal denied*, 607 Pa. 709, 5 A.3d 818 (2010).

> The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Commonwealth v. Lauro*, 819 A.2d 100, 107 (Pa.Super. 2003), *appeal denied*, 574 Pa. 752, 830 A.2d 975 (Pa. 2003) (internal citations and quotation marks omitted).

Reading Rules 582 and 583 together, our Supreme Court established the following test for severance matters:

> Where the defendant moves to sever offenses not based on the same act or transaction…the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the

other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Dozzo, supra*** (quoting ***Commonwealth v. Collins***, 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998).

"[W]hen reprosecution subsequent to the grant of a mistrial is not barred, the proceedings revert to a pretrial status as though the original trial had never occurred." ***Commonwealth v. Mulholland***, 549 Pa. 634, 652, 702 A.2d 1027, 1035-36 (1997). Significantly, the parties are free to re-litigate pre-trial rulings when the facts governing the issue have changed between the first and second trial. ***Id.*** at 652, 702 A.2d at 1036.

Instantly, prior to Appellant's joint trial with Mr. Roe, the court severed Appellant's false reports to law enforcement authorities charge, based on jury confusion concerns with respect to Mr. Roe. Appellant subsequently proceeded to a joint trial with Mr. Roe on the criminal homicide charge, which resulted in Mr. Roe's conviction of first-degree murder and a mistrial for Appellant. After the court declared a mistrial, the Commonwealth sought to consolidate Appellant's criminal homicide charge and false reports to law enforcement authorities charge on November 27, 2013. The court granted the Commonwealth's request without a hearing on December 10, 2013. The court then denied Appellant's January 6, 2014 motion to sever the charges

on January 13, 2014.

After the court's declaration of a mistrial as to Appellant's criminal homicide charge, Appellant's case returned to its pre-trial status. *See Mulholland, supra*. Importantly, unlike the first trial, jury confusion was not a concern in the second trial because Mr. Roe was no longer a co-defendant. This factual change justified the court's reevaluation of the severance issue. *Id.* Further, the criminal homicide charge and false reports to law enforcement authorities charge were not temporally remote. Appellant filed the police report, which implicated Victim in the burglary and contained false information, four days prior to Victim's murder. Appellant and Mr. Roe then used the police report to lure Victim to the cabin where the shooting occurred. Thus, the police report was integral to the Commonwealth's prosecution of Appellant's criminal homicide charge. In fact, the Commonwealth introduced the police report and false information in Appellant's first trial to establish the motive for the homicide. *See Dozzo, supra*. Under these circumstances, Appellant failed to demonstrate the risk of undue prejudice necessary to warrant severance of the charges. *See Lauro, supra*. Therefore, the court properly granted the Commonwealth's motion to consolidate the charges, and issue 1(A) warrants no relief. *See Mollett, supra*.

In issue 1(B) and issue (2), Appellant argues the Commonwealth made an improper reference at trial to Appellant's request for an attorney and

subsequent silence.  Appellant avers the prosecutor's question to Corporal Barni elicited a reference that had no purpose other than to imply Appellant's guilt.  Appellant maintains the improper reference prejudiced Appellant's presumption of innocence because no juror could disregard Appellant's request for an attorney.  Appellant further submits the court's curative instruction did not overcome the prejudice caused by the improper reference.  Appellant concludes the court abused its discretion when it denied Appellant's motion for a mistrial, and this Court should vacate her judgment of sentence and remand for a new trial.  We disagree.

"[T]he review of a trial court's denial of a motion for mistrial is limited to determining whether the trial court abused its discretion." *Commonwealth v. Brooker*, 103 A.3d 325, 332 (Pa.Super. 2014), *appeal denied*, ___ Pa. ___, 118 A.3d 1107 (2015).  "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will…discretion is abused." *Id.*

> It is a clear violation of [a defendant's] constitutional right against self-incrimination to make a reference at trial to his silence while in police custody.  Not every such reference, however, requires a new trial.  Prompt and adequate cautionary instructions can cure what might otherwise be reversible error.

*Commonwealth v. Gbur*, 474 A.2d 1151, 1154 (Pa.Super. 1984) (internal citations omitted).  To evaluate whether cautionary instructions can cure a

- 12 -

reference to a defendant's silence, "courts must consider 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instruction." ***Commonwealth v. Moury***, 992 A.2d 162, 176 (Pa.Super. 2010).

A reference to a defendant's silence could also constitute harmless error. ***Commonwealth v. Boone***, 862 A.2d 639, 646 (Pa.Super. 2004). The reference is harmless error if:

> [T]he appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. In reaching that conclusion, the reviewing court will find an error harmless where the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant. The burden of establishing that the error was harmless rests upon the Commonwealth.

***Commonwealth v. Mitchell***, 576 Pa. 258, 280, 839 A.2d 202, 214-15 (2003).

Instantly, the trial court addressed the reference to Appellant's silence and her request for a mistrial as follows:

> [Appellant] believes she is entitled to a new trial because the prosecution called attention to her request to speak to an attorney.
>
> In this case, [Appellant] had three extensive interviews with the investigating officers. The first interview was on August [14], 2012, in the emergency room of Ruby Memorial Hospital after the shooting. The second interview was August 15, 2012, which took place at the scene of the shooting and was videotaped. The third

- 13 -

interview was on August 24, 2012, at the state police barracks in Waynesburg. On August 14 and 15, [Appellant] was considered to be a victim as opposed to a suspect because she had been shot at the same time and place as [Victim]. By August 24, 2012, investigators had gathered additional evidence and had become aware of discrepancies in [Appellant's] version of events. This interview lasted over two hours. The interview began with the officer [formally] advising [Appellant] of her rights to an attorney and her right to say nothing. [Appellant] acknowledged those rights and signed a waiver. …[T]he following exchange occurred in [c]ourt [with respect to this interview]:

> Q [ADA Chambers]: And did she sign a written waiver of her rights?
>
> A [Trooper Barni]: Yes, she does. It's a form, our form, explains the, her rights waivers, and that she voluntarily agrees to talk to us.
>
> Q: Okay. And you also advised her she had a right to an attorney?
>
> A: That's right.
>
> Q: At some point during the interview did she invoke that right?
>
> A: At the very end of the interview, she did.

At that moment, defense counsel approached the bench and at side bar moved for a mistrial. The motion was denied and [the court] gave the following instruction to the jury:

> Ladies and gentlemen, if there was any mention of [Appellant's] request for an attorney, it has nothing to do with the guilt or innocence of [Appellant]. As I said at the very beginning, a person accused of a crime or even suspected of a crime need say nothing. And not only need a suspect say nothing, but that silence cannot be used against her. Whether or not it should have been mentioned

today, you must put it out of your mind, it has nothing whatsoever to do with [Appellant's] guilt or innocence of anything she is charged with.

\*     \*     \*

If any reference to an accused's exercise of her right to [an] attorney was minimally prejudicial, it was this case. The fact of the matter is, [Appellant] was not silent. She talked to investigators for many hours on August 14 and 15 and she talked to them for over two hours on August 24, after she had been advised of her rights and before she finally asked to speak to an attorney. …Here, there was not much silence. [Appellant] invoked her right to silence only after extensively reviewing all the relevant events.

Next, we consider how it was elicited. Frankly, we are at a loss to explain what the [prosecutor] intended to elicit. Usually, statements about an accused's silence are made in response to some more general inquiry, such as "what happened next?" Here, the question expressly asked whether [Appellant] invoked her right to [an attorney]. The trooper answered that she did, but did not until the conclusion of the interview. However, the inquiry went no further.

Third, the [prosecutor] did not exploit the disclosure by the police officer. There was no further reference to [Appellant's] request and the topic did not come up in closing arguments.

Finally, we believe that our cautionary instruction effectively instructed the jury to ignore the reference to [Appellant's] request for an attorney because there was abundant testimony that she talked to the officers repeatedly and at length.

\*     \*     \*

The cautionary instruction as well as the lengthy account by Trooper Barni of his interviews with [Appellant] sufficiently protected her from any prejudice arising from the jury's knowledge of her request for counsel at the end

- 15 -

of an extensive conversation with the investigating officers.

(**See** Trial Court Opinion, filed December 22, 2014, at 2-6). The record supports the court's sound reasoning. **See Brooker, supra**. Therefore, Appellant's issues 1(B) and 2 warrant no relief. Based upon the foregoing, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/2016