471 A.2d 885

**COMMONWEALTH of Pennsylvania**

v.

**Francis SANDERS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 22, 1983.

Filed Feb. 10, 1984.

Irwin Paul, Philadelphia, for appellant.

Scott Breidenbach, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before MONTEMURO, WATKINS and CERCONE, JJ.

MONTEMURO, Judge:

On November 6, 1981, the appellant, Francis Sanders, was found guilty after a jury trial, on one count each of criminal conspiracy,[1] theft by receiving stolen property,[2] violation of the Pharmacy Act,[3] and criminal attempt to violate the Pharmacy Act.[4]  He was also found guilty on two counts of forgery.[5]  The charges arose out of an incident wherein the appellant allegedly attempted to procure prescribed drugs by means of a forged prescription slip stolen from the office of Dr. Anthony J. Giaimo.

The appellant filed post-verdict motions in arrest of judgment and for a new trial, which were denied by the trial court.  He was subsequently sentenced to one (1) to five (5) years imprisonment on the criminal conspiracy charge. Sentence was suspended on all other charges.  This appeal followed.

1.  18 Pa.C.S.A. § 903

2.  18 Pa.C.S.A. § 3925

3.  63 P.S. § 390–8(13)

4.  18 Pa.C.S.A. § 901

5.  18 Pa.C.S.A. § 4101

Two issues are raised for our consideration; however, because we find only one of them to be meritorious, we need only discuss that issue, to wit: the trial court erred in commenting on the appellant's post-arrest silence. After reviewing the trial transcript in light of the relevant law, we agree that a prejudicial error was committed and consequently vacate the judgment of sentence and remand the case for a new trial.

In order to understand the appellant's contention, it is necessary to establish the factual context. The appellant was a chronic alcoholic who suffered from an internal disorder called pancreatitis. For a period of twelve (12) to fifteen (15) months he was being treated for this disorder by Dr. Anthony J. Giaimo. Dr. Giaimo's treatment was principally to prescribe for the appellant Tylenol with Codeine # 4 for pain, and sometimes another drug, Doriden, when the appellant complained of insomnia.

On April 10, 1981, the appellant visited Dr. Giaimo. Dr. Giaimo testified that on that occasion he prescribed only Tylenol with Codeine for the appellant. On April 12, 1981, the appellant, along with two female companions, drove to Ralph's Pharmacy in Whitemarsh Township. The appellant presented two prescription slips to Ralph Tucci, the proprietor and pharmacist. One of the slips was for Tylenol with Codeine, and the other was for Doriden; both were putatively signed and stamped by Dr. Anthony J. Giaimo.

The pharmacist, Mr. Tucci, had filled prescriptions for the appellant previously, but on this occasion he discerned a difference between the signatures on the two prescription slips. Mr. Tucci told the appellant that he would have to verify the prescriptions with Dr. Giaimo. Mr. Tucci called Dr. Giaimo who said that he would notify the police and also come to the pharmacy himself. Dr. Giaimo testified that he was suspicious because several of his prescription slips had been stolen recently.

Soon thereafter, a Whitemarsh Township police officer arrived, conversed with Mr. Tucci, and compared the signa-

tures on the prescription slips. Dr. Giaimo then arrived, and after examining the prescription slips, disclaimed writing the prescription for Doriden. He also identified the appellant and the two females as patients of his. At that point, the police officer placed the appellant under arrest. A search of the vehicle turned up sixteen (16) other prescription slips made out for either Francis Sanders or Patricia Parker Goronski [one of the females].

The appellant testified that on April 10, 1981, he visited Dr. Giaimo and received prescriptions for both Tylenol and Doriden. After cross-examination and redirect examination, the trial judge instigated the following exchange:

BY THE COURT:

Q. Where were you seated in the car when you went to Mr. Tucci's pharmacy?

A. I was in the back seat.

Q. And what kind of a car was it?

A. I think it was an old beat-up—I don't know. It wasn't in too good a shape of a car. I guess it was a Plymouth, you know, '60-something Plymouth, '64, '65 Plymouth.

Q. Was it a two-door or four-door car?

A. I can't recall, Your Honor.

Q. Where was Patty seated?

A. She was seated on the right passenger side in the front.

Q. While you were in the car from the time you went to Main Street in the Plymouth, did you see any prescription blanks in that car?

A. No, I didn't sir.

Q. You didn't?

A. No. I didn't.

Q. So you don't know that there were any prescription blanks on the floor?

A. No. I don't.

Q. . You didn't observe anything on the floor?

A. No. I didn't observe anything on the floor. In the back seat, if there was anything, I didn't take notice.

Q. You didn't notice anything on the front seat either?

A. Like I said, I was sitting in the back. No, I didn't.

Q. Now, when the officer came, were you inside the pharmacy or were you outside the pharmacy?

A. I was inside the pharmacy.

Q. When the officer approached you and said, come along with me, and he had the two prescriptions which you handed to the pharmacist—is that correct?

A. Yes, it is.

Q. —didn't you question the doctor as to why these were being questioned since you had just gotten them a day or so before?

A. I didn't have time to do anything. They threw me into a car and handcuffed my hands behind my back.

Q. Was the doctor there at the time?

A. No. He came about five minutes after the police came. He wasn't there.

Q. Were you still at the scene when the doctor came?

A. Yes, I was.

(N.T. November 5, 1981, at 56–58). At this point, the appellant's trial counsel requested a sidebar conference at which he moved for a mistrial on the ground that the trial judge's question called for a response which alerted the jury to the appellant's failure to protest his innocence at the time of his arrest. In response to the motion, the trial judge said:

THE COURT: Mistrial is denied. I am clearing up something in terms of absolute general palaver that he got on the stand and said to the jury. The jury is certainly entitled to know where he was seated in the car, what he had an opportunity to observe and whether or not he made a protest to the police or to the doctor who

arrived at the scene who purportedly gave him this pre-
scription.

(N.T. November 15, 1981, at 58–59). Moreover, in the trial
court's Pa.R.A.P.1925 opinion, it is stated: "The court was
merely attempting to impeach defendant's credibility by
pointing out an inconsistency between his statements and
his actions at the time of arrest." Lower Court Opinion at
7.

In *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537
(1982), the supreme court ordered that a new trial be
granted to a defendant who had been convicted of voluntary
manslaughter. At trial, the defendant testified that he
believed he was being shot at, and thus, only fired back in
self-defense. On cross-examination, the prosecutor asked
the defendant if he had ever informed the police of the
potentially exculpatory facts. Defense counsel's motion for
mistrial was denied. The supreme court held that this was
error, stating:

> The prejudice to the defendant resulting from reference
> to his silence is substantial. While it is efficacious for the
> Commonwealth to attempt to uncover a fabricated ver-
> sion of events, in light of the 'insolubly ambiguous'
> nature of silence on the part of the accused, *Doyle v.
> Ohio*, 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d
> 91, 97 (1976), we do not think it sufficiently probative of
> an inconsistency with his in-court testimony to warrant
> allowance of any reference at trial to the silence. Accord-
> ingly, the Commonwealth must seek to impeach a defend-
> ant's relation of events by reference only to inconsisten-
> cies as they factually exist, not to the purported inconsist-
> ency between silence at arrest and testimony at trial.
> Silence at the time of arrest may become a factual
> inconsistency in the face of an assertion by the accused
> while testifying at trial that he related his version to the
> police at the time of arrest when in fact he remained
> silent. *Doyle v. Ohio, Id.* at 619, n. 11, 96 S.Ct. at 2245,
> n. 11, 49 L.Ed.2d at 98, n. 11. Absent such an assertion,

the reference by the prosecutor to previous silence is impermissible and reversible error.

*Id.* 499 Pa. at 583, 454 A.2d at 539–40.

■ After examining the transcript, we find no indication that the appellant ever asserted at trial that he protested his innocence at the time of arrest. Therefore, the attempt by the trial judge to point out the appellant's failure to do so is error, for which a new trial is warranted.[6]

■ We are aware that in the present case it was the trial judge, not the prosecutor who brought to light the appellant's post-arrest silence. This factor, however, buttresses our decision. "A question so partisan in nature, although perhaps excusable if made by opposing counsel on cross-examination, has no place in a judge's conduct of a trial ..." *Commonwealth v. Williams,* 468 Pa. 453, 461–62, 364 A.2d 281, 286 (1976). (Footnote omitted). It is not the province of a trial judge in a criminal case to attempt to impeach the testimony of the defendant. The prosecution function is best left to the attorney for the Commonwealth. "The prerequisite of a fair trial is that the trial judge conduct the trial with absolute impartiality. The judge must not, by his comments or demeanor, or in any other way, display any partiality to or prejudice against either party or either attorney." *Commonwealth v. Nicholson,* 308 Pa.Super. 370, 391, 454 A.2d 581, 591 (1982) (dissenting opinion by Spaeth, J.). Although the trial judge also stated that he was "clarifying for the jury exactly what transpired ...." (N.T. November 15, 1981, at 59), we must conclude that in doing so he stepped outside the parameters of the judicial function.

Judgment of Sentence is vacated. Remand for new trial. Jurisdiction is not retained.

**6.** The discrepancy in testimony concerning the presence of Dr. Giaimo at the time of arrest must be resolved in favor of the Commonwealth. This, however, does not affect our decision.