550 A.2d 800

COMMONWEALTH of Pennsylvania, Appellee,

v.

David ROBINSON, Appellant.

Superior Court of Pennsylvania.

Submitted May 3, 1988.

Filed Nov. 14, 1988.

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Edward Clark, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before CIRILLO, President Judge, and BECK and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence (2–5 years imprisonment) for burglary by the appellant, David Robinson. We affirm.

In reviewing the evidence in a light most favorable to the verdict-winner, the Commonwealth here, and all reasonable inferences to be derived therefrom, the record discloses that at 4:55 a.m. on the 12th of January, 1987, Pittsburgh Police Officer Frank Vetere was cruising the North Side of the City when he received a call to proceed to 1725 Beaver Avenue. The Gulf Station alarm had been activated. Within two minutes, the officer was on the scene and observed a "door swinging open" inside the service station. He turned on his spotlight and saw "a man coming out of the door in th[e] back room ... and running across the front of the station" and exiting through the broken window in the front of the establishment.

Although the entire time that the officer witnessed the intruder lasted for some thirty seconds, and this was with the aid of a forty watt bulb lighting the station office and the illumination provided by the officer's vehicular spotlight, he was able to see the defendant's face for only a "few seconds" as the culprit ran past him.

The officer pursued the fleeing defendant but lost sight of him for about five minutes as he (defendant) ran around a corner. Nonetheless, with the aid of other officers who had arrived on the scene, the area was searched and the defendant was located lying, face down, between a cyclone fence and a telephone pole which ran the length of the Metropolitan Parking Lot situated near the Gulf Station.

As told by the defendant at trial, when the police found him,

... I got up. Nobody pulled me out from behind a thing. I stood up and ... the officer stood back....

Thereafter, Officer Schon–Bachler conducted a body-search of the defendant and recovered four rolls of quarters, two rolls of dimes, some bills and a screwdriver. The rolls of coins had stamped on them: "Beaver Avenue Gulf, 1725 Beaver Avenue, Pittsburgh, Pennsylvania 15233". The defendant was then arrested and removed to the police station.

After a jury trial, the defendant was adjudged guilty and sentenced. This timely appeal followed.

The defendant raises two issues for our consideration, the first of which challenges the prosecutor's questioning him regarding his silence at the time of his arrest as violative of his Fifth Amendment right not to incriminate himself.

■ At the trial, it was a question of interest as to whether the circumstances surrounding the defendant's capture, and the prosecution's inquiry of the defendant as to his failure to inform the police of his version of events, were reflective of a pre- or post-arrest situation. The former is admissible for impeachment purposes, *see Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1985),

while the latter is a prohibited area of inquiry subject, in some cases, to rectification by means of a cautionary instruction. *See Commonwealth v. Gbur*, 327 Pa.Super. 18, 474 A.2d 1151 (1984).

Instantly, the Commonwealth's witnesses' accounting of what occurred when the defendant was apprehended is reflective of an immediate arrest without the opportunity for the defendant to speak, and, this, would label the prosecutor's questioning of the defendant, as to his failure to speak when captured, a prohibited subject of discussion. On the other hand, the defendant's recollection of the incident is consistent with a pre-arrest scenario in which he was availed the chance to state his version of events prior to the police effectuating his arrest.[1]

Because we are to accord the verdict-winner the benefit of all favorable evidence and the reasonable inferences to be adduced therefrom, we are permitted to view the question of the prosecutor: "Did you tell the police officers anything when they found you?" as eliciting information from the defendant indicative of a pre-arrest context and the proper subject of inquiry for impeachment purposes. *See Turner*, supra.

Especially is this appropriate since the thrust of the accused's defense was that he was a victim of circumstances and merely happened upon the commission of the burglary in progress. And, fearful that he would be inculpated in

1. In particular, the defendant testified on rebuttal that no one forced him up from the ground behind the telephone pole where he was hiding. He stood up of his own accord and became visible to the officers before he was approached and directed not to move at the point of a gun by police. He was thereafter handcuffed and searched.

In contrast, Officer Vetere told of how Officer Schon–Bachler spotted the defendant and "grabbed hold of him and pulled him out" from under the telephone pole. Similarly, Officer Schon–Bachler recited on rebuttal that when the defendant "jumped up" from under the telephone pole, he was placed under arrest before he was put into the police wagon, searched and found to have rolls of coins on his person.

It should be noted that none of the officers recalled whether a weapon had been pulled and aimed at the defendant as he rose from behind the telephone pole. It will be recalled that the defendant testified otherwise.

the crime (the reasons for which, if defense counsel's clos-
ing argument is to be believed, rested upon his "race"), he
fled on foot with rolls of coins he stated he had picked up
from the grounds of the gas station as the alleged two
other burglars made their escape. He did all of this rather
than remain on the scene and inform the police of what he
claimed he had witnessed—two individuals running from
the station with the arrival of the police.

 Even if, arguendo, we were to hold that the question
by the prosecutor was proscribed because we had a *post*
–arrest situation, we are not so prone to conclude that the
*single* reference to the defendant's silence was so egregious
that no amount of cautionary instructions could cure the
impropriety. During the course of the trial, the judge did
give a lengthy cautionary instruction on the subject of the
prosecution's questioning of the defendant as to whether he
stated anything to the police upon his being found; to-wit:

> Ladies and gentlemen of the jury, last night after you
> left we had legal argument on several issues, and we all
> consulted the law overnight, and that has resulted in
> various decisions of law today, some of which I will tell
> you about. * * * At the end of the day yesterday [the
> assistant district attorney] asked the defendant on cross-
> examination a question something to the effect why
> didn't you tell the police that. I want to explain some-
> thing to you: Once a person is arrested, any citizen of
> this country, that person has an absolute right to remain
> silent. That is guaranteed by our Constitution. So when
> you are arrested, you don't have to say anything, and
> that right is so important that the jury or Judge may not
> consider their silence as any evidence of guilt. So the
> fact that the defendant was arrested and didn't tell the
> police officers anything or say anything is absolutely no
> evidence against him, and you may not consider any
> inference from his silence after his arrest. Now, there is
> a question of why, in view of the fact that the defendant
> says that he observed a burglary in progress, he didn't
> simply go up to the officers and inform them that he seen

[sic] a burglary and here are the coins that the burglars dropped. That period of time would have been before his arrest, and you may consider his silence at that time, his failure not to inform the officers that he had just seen a crime. That may be considered in your deliberations.

The cautionary instruction was given to the jury the day following the complained-of question by the prosecutor, which was not too late in time and need not have been given at the point of the defendant's objection.

The main objective of the trial court's instruction to the jurors was to eradicate from their minds the reliance or use of the defendant's post-arrest silence to influence their decision-making. *See Gbur*, supra. If we were to conclude that the instruction served no purpose other than to refresh the jury's mind on the "silence" factor, then, taken to its logical conclusion, no instructions given to the jury would be meaningful. The ideal and most advantageous time to give such is not always at the moment the objectionable remark or inquiry is made. We subscribe to the view and prefer to believe that the jury listens to and obeys the directions of the judge when it comes to the law and its role in the judicial process.

Further, the nature of the reference (a *single* inquiry as) to the accused's silence, and how it was elicited, precludes us from holding that the assistant district attorney "exploited" the subject to the prejudice of the accused. *See Commonwealth v. Mays*, 361 Pa.Super. 554, 558–59, 523 A.2d 357, 359 (1987).

Accordingly, on this issue in the case, we hold that the actions of the trial court, under the particular facts here, were appropriate to protect the interest of the defendant to a "fair" trial, remembering that the United States Constitution does not require a "perfect" trial to effectuate one's rights under the law.

■ The last of the defendant's complaints is an assault upon the sufficiency of the evidence as failing to establish his guilt beyond a reasonable doubt. *See Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980).

The evidence, as stated previously, must be viewed in a light most favorable to the verdict-winner, as well as all reasonable inferences to be derived therefrom. *See Commonwealth v. Burton*, 450 Pa. 532, 301 A.2d 599 (1973).

The case for the prosecution established that the owner of the Gulf Station had secured the premises prior to his closing the business. Also, he recounted that he did not authorize anyone to entry or remain on the premises in his absence.

Further, Officer Vetere was "absolutely" sure that the individual he witnessed exiting the station upon his arrival was the defendant. His apprehension of the defendant within a short distance of the station in a prone position under a telephone pole, possessing rolls of coins wrapped and stamped with the name of the Gulf Station, was evidence sufficient to sustain the defendant's conviction.

The fact that the defendant took the stand and testified that he was an innocent bystander who became frightened when the police came upon the scene causing him to flee, were facts for the jury to weigh as credible or not in the face of the prosecution's case.

After a careful review of the record, in accordance with the required standard, we find that there was sufficient evidence to enable the trier of fact to find beyond a reasonable doubt every element of the crime of which the defendant was convicted. *See Davis*, supra.

Accordingly, finding that the evidence was sufficient to convict and the commission of no errors on the part of trial court below occurred, we will affirm the judgment of sentence.

Judgment of sentence affirmed.

CIRILLO, President Judge, files a dissenting opinion.

CIRILLO, President Judge, dissenting:

Because I believe that the reference to the appellant's post-arrest silence elicited by the prosecutor impermissibly

prejudiced him in the eyes of the jury, I respectfully dissent from the majority's opinion.

In the early morning of January 12, 1987, police were summoned by an alarm from a Gulf service station on the North Side of Pittsburgh. Two police cars approached the station: one went to the front, and another to the back. Officer Frank Vetere, approaching the front of the station in his patrol car, testified that he saw a man inside the dimly lit sales office. The office was lit only by a small light, not an overhead light. Officer Vetere testified that his attention was drawn by a swinging door. He turned his spotlight on the station, then he saw a man come out the door of a back room, run across the front of the station, out a broken window, and down the side of the station. He testified that he observed the man for some thirty seconds as he ran, but on cross-examination admitted that he only saw his face for some three seconds. The remainder of the time he saw his back and profile as he ran.

The officer then followed him with his car, and lost sight of him. Other patrol cars had responded to the alarm, and the search was taken up on foot. Robinson was found flat on the ground under a telegraph pole by another officer. He was then searched, and several rolls of change were found on him, along with two screwdrivers. The rolls were marked with the name of the service station. Robinson was handcuffed, and placed under arrest. He was later identified by Officer Vetere before the City Court Magistrate. No line-up or photo array was held.

While it is settled law in this Commonwealth that references by a prosecutor to post-arrest silence are violations of an accused's fifth amendment right against self-incrimination, *Commonwealth v. Singletary*, 478 Pa. 610, 611, 387 A.2d 656 (1978), it is equally well settled that not every reference requires a new trial. *Commonwealth v. Maloney*, 469 Pa. 342, 349, 365 A.2d 1237, 1241 (1976). Prompt and adequate instructions may cure what could otherwise be reversible error. *Commonwealth v. Gbur*, 327 Pa.Super. 18, 24, 474 A.2d 1151, 1154 (1984). In order to deter-

mine whether the reference to the accused's silence may be cured by an instruction, we consider four factors: (1) the nature of the reference to the accused's silence; (2) how it was elicited; (3) whether the district attorney exploited it; and (4) the promptness and adequacy of the cautionary instruction. *Commonwealth v. Mays*, 361 Pa.Super. 554, 558–59, 523 A.2d 357, 359 (1987), *allocatur denied*, 516 Pa. 613, 531 A.2d 780 (1987); *Commonwealth v. Anderjack*, 271 Pa.Super. 334, 342, 413 A.2d 693, 698 (1979). If the reference to the accused's silence is of a nature that would seriously compromise the jury's objectivity, and is likely to deprive the accused of a fair trial, curative instructions are inadequate and a new trial is required. *Commonwealth v. Brown*, 489 Pa. 285, 298, 414 A.2d 70, 76 (1980); *Gbur*, 327 Pa.Super. at 24, 474 A.2d at 1154.

In the instant case, before determining whether curative instructions were necessary, we must first determine the nature of the silence upon which the accused was questioned. It is clear that pre-arrest silence is admissible in this Commonwealth for impeachment purposes. *Commonwealth v. Turner*, 499 Pa. 579, 582, 454 A.2d 537, 539–40 (1982); *Commonwealth v. Hassine*, 340 Pa.Super. 318, 341, 490 A.2d 438, 450 (1986). We must determine whether the reference to which defense counsel took exception dealt with pre-arrest silence, or silence at the time of arrest. The majority determines that the reference in this case was a reference to pre-arrest silence. It reaches this conclusion by considering all the evidence and inferences in the light most favorable to the verdict winner. While this is the proper standard of review in a case involving a sufficiency of the evidence question, we are here faced with a constitutional question, and that standard does not apply. Granted, appellant has also raised a sufficiency of the evidence argument, but that does not cause that standard to diffuse to all arguments raised by Robinson on appeal. To allow such an interpretation of the evidence would lead to differing results in cases in which questions of sufficiency were raised in conjunction with other arguments, and in cases in

which those other arguments were raised separate from a sufficiency claim. This is, at best, illogical.

In any case, I would find the instant case to be similar to the seminal case of *Commonwealth v. Turner, supra.* In *Turner,* the appellant was charged with the shooting death of Robert Hilton. There was conflicting testimony as to whether the appellant shot him after having overpowered him, or whether the gun went off in the course of a struggle. He testified in his own behalf that he noticed a drug dealer behind Hilton after he took the gun from him, and, thinking that the man had fired a shot at him, shot back, striking Hilton. On cross-examination, the prosecutor asked whether he had ever told the police someone was shooting at him. He had not given a statement to the police; his testimony in court was the first time he had offered an exculpatory version of the events. An objection to the question was made, the trial judge sustained the objection, but denied the motion for mistrial and gave cautionary instructions to the jury *sua sponte.* The prosecutor did not mention the appellant's silence again.

According to this court in *Commonwealth v. Hassine, supra,* the appellant's silence in *Turner* was silence at or after the time of arrest. *Hassine,* 340 Pa.Super. at 342, 490 A.2d at 450. Further, in *Commonwealth v. Sanders,* 324 Pa.Super. 372, 471 A.2d 885 (1984), the trial court questioned the appellant as to why he had not asked the doctor whose prescriptions he had allegedly stolen why the prescriptions were suspicious. Sanders had testified that he had received the prescriptions from the doctor a day or two before the incident. *Id.,* 324 Pa.Superior Ct. at 375–76, 471 A.2d at 887. The appellant replied that he had not had time, as he had been handcuffed and thrown into the police car. *Id.* This court, relying on *Turner,* held that the error was reversible since it impermissibly questioned the appellant about his silence at the time of his arrest. *Id.,* 324 Pa.Superior Ct. at 378, 471 A.2d at 888.

In this case, the prosecutor similarly attempted to question Robinson about his silence at the time of arrest:

Q: Why did the police find you hiding?

A: I was scared that I would get the blame.

Q: Do you know Officer Terry who testified today? Did you see him?

A: Yes.

Q: Was he there when you were searched and the quarters were found?

A: Yes.

Q: *Did you tell the police officers anything when they found you?*

A: No.

Ms. Kriesman: Objection, Your Honor. Improper question.

(emphasis added). The question, "Why did the police find you hiding?" goes to pre-arrest silence, and was not objected to by counsel. The question to which counsel took exception did not deal with Robinson's failure to relate his story to the police before his arrest. It concerned his silence when he was found, and as the record shows, he was taken into custody by police as soon as they discovered him.

Having determined that the prosecutor's question was improper and violative of Robinson's fifth amendment right not to incriminate himself, I would then determine whether the instructions given by the trial judge sufficiently eliminated any prejudice accruing to him from that question. Again, turning to *Turner*, we note that despite the trial court's cautionary instructions, the supreme court of this Commonwealth held on appeal that substantial prejudice to the appellant had resulted. "[T]here exists a strong disposition on the part of lay jurors to view the exercise of the Fifth Amendment privilege as an admission of guilt...." *Turner*, 499 Pa. at 582, 454 A.2d at 539. According to the supreme court:

> While it is efficacious for the Commonwealth to attempt to uncover a fabricated version of events, in light of the "insolubly ambiguous" nature of silence on the part of the accused ..., we do not think it sufficiently probative of an inconsistency with his in court testimony to warrant allowance of any reference at trial to the silence. Accord-

ingly, the Commonwealth must seek to impeach a defendant's relation of events by reference only to inconsistencies as they factually exist, not to the purported inconsistency between silence at arrest and testimony at trial. Silence at arrest may become a factual inconsistency in the face of an assertion by the accused while testifying at trial that he related this version to the police at the time of arrest when in fact he remained silent.... Absent such an assertion, the reference by the prosecutor to previous silence is impermissible and reversible error.

*Id.*, 499 Pa. at 583, 454 A.2d at 539–40.

In *Gbur*, however, this court stated that the *Turner* court said nothing to indicate that an improper pre-*Miranda* reference could not be cured by adequate cautionary instructions. *Gbur*, 327 Pa.Super. at 26, 474 A.2d at 1155. We note that the instructions given by the trial court in *Turner* were so vague as to be useless. *Turner*, 499 Pa. at 581 n. 2, 454 A.2d at 538 n. 2. The *Gbur* court noted that the facts before it differed significantly from those that had confronted the *Turner* court. In *Turner*, the *Gbur* court pointed out, the improper reference had come from the prosecutor during cross-examination of the appellant, and was an attempt to emphasize the silence of the appellant at the time of arrest in contrast to his testimony at the time of trial. *Gbur*, 327 Pa.Super. at 26, 474 A.2d at 1155. In *Gbur*, the testimony was inadvertently obtained from another witness, and in contradiction to other testimony that the appellant had not remained silent at arrest. *Id.*, 327 Pa. Superior Ct. at 26–27, 474 A.2d at 1156. In this situation, the court held, adequate cautionary instructions could, and did, minimize the prejudice accruing to appellant. *Id.*

Applying the four-pronged test of *Mays* and *Anderjack*, I would hold that the nature of the reference to Robinson's silence was such that no cautionary instruction could adequately assuage the prejudice created in the minds of the jury. The reference was made by the defendant himself, and was an explicit reference to the fact that he had not attempted to exculpate himself at the time of his arrest.

Such an admission is strongly suggestive of guilt to a jury. *See Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 85, 223 A.2d 296, 298 (1966). The present situation concerns just the type of questioning that the supreme court decried in *Turner*. In that case, although the supreme court did not explicitly consider the trial court's instructions and declare them to be inadequate, it seems clear that the court found that the prejudice created by the remarks could not be cured by the trial court's instructions.

The majority states that the reference to Robinson's silence was not exploited by the Commonwealth and so was not grounds for reversal. I am unimpressed by the fact that counsel for the Commonwealth refrained from pressing the point after the reference was made, or from mentioning this silence during his closing arguments. The motivation behind the reference in cross-examination was clearly to place the silence at the time of arrest before the jury. In contrast to *Gbur*, the prosecutor here deliberately presented Robinson's silence at the time of arrest to the jury, for comparison to his testimony at trial. The questioning which led to the reference to his silence focused on Robinson's failure to remain and speak to police before he was apprehended. This appears to me to be sufficient exploitation of that silence to warrant either adequate cautionary instructions or a mistrial.[1]

The last factor to be considered is the promptness and adequacy of the trial court's instructions. After Robinson made the statement concerning his silence, counsel objected. A sidebar conference was held off the record. However, the trial court gave no instructions at this time, and the prosecutor continued with the questioning. Clearly, were cautionary instructions to have been of any value, they should have been given promptly. They were not. Instead,

---

1. I would point out that I disagree with the Commonwealth's contention that defense counsel's decision to mention the post-arrest silence in her closing remarks precludes her from raising it on appeal before us. Counsel was clearly attempting to ameliorate the prejudice she felt had been created, and was zealously defending her client. I will not comment on whether this tactic was well- or ill-considered, and I would not view it as a waiver of this argument.

the jury was permitted to ruminate over the possible implications of the prosecutor's questions and Robinson's answers during an entire night.

Further, when the instructions were given the next day, the trial court instructed the jury that they could consider why Robinson failed to go to the police before he was arrested and explain that he was an innocent witness, but that they could not consider silence after he was arrested. While such instructions are strictly correct, I do not see that they in any way alleviated the problems arising from the prosecutor's misconduct. Rather than erasing the prejudice from the jury's mind, the instructions merely embedded it further.

I agree with the trial court that:

[It is] virtually impossible for the jury to disregard the logical question raised by the defendant's exculpatory testimony that he witnessed a crime committed by others and saw the police arrive: Namely, why was nothing said. The failure of an innocent witness to come forward is neither incriminating nor interrogatory. It is simply a permissible logical question prompted by the defendant's own testimony about his behavior before his arrest.

These logical questions in the minds of the jury are precisely the reasons why any curative instructions offered by the judge were inadequate. Robinson had no duty to remain and offer himself as a witness. However, failure to come forward cast a pall of guilt over him. It would be difficult for a jury to attempt to artificially sever his post-arrest silence from his pre-arrest refusal to come forward. The inclination would be to consider them both together; the refusal to relate his explanation to the police at arrest adds weight to the implication of his guilt arising from his failure to offer himself as a witness.

Although questioning Robinson about his failure to speak with the police before his arrest was permissible, it was blatant and prejudicial error for the prosecutor to continue the questioning into the post-arrest area. Further, giving no instructions until the following day compounded the

prejudice accruing against Robinson. For these reasons, I would reverse the order of the trial court, and grant a new trial.