J-S36019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAIME OTERO | |
| Appellant | No. 2771 EDA 2013 |

Appeal from the PCRA Order September 24, 2013
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0000290-2008

BEFORE:  GANTMAN, P.J., JENKINS, J., and FITZGERALD, J.[*]

MEMORANDUM BY JENKINS, J.:                **FILED AUGUST 06, 2014**

Jaime Otero ("Appellant") appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Specifically, Appellant argues that his trial counsel was ineffective for failing to cross-examine the victim on whether she telephoned Appellant's parole officer before calling the police following the assault for which Appellant was convicted.  After careful review, we affirm.

The trial court aptly set forth the facts and procedural history of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

On August 22, 2008, [Appellant] was convicted by a jury of Simple Assault, Terroristic Threats, Possession of a Controlled Substance, and Possession of Drug Paraphernalia. The charges stemmed from an incident which occurred between [Appellant] and Tanya Theobold ("Complainant") at an apartment in Springfield Township, where [Appellant] had been temporarily living with Complainant and her young son. [Appellant] and Complainant had an argument in the morning on November 29, 2007, during which [Appellant] used a utility knife in a threatening manner towards Complainant, threatening to cut both her and her son. Complainant called 911 and reported [Appellant's] name, described his threatening behavior and advised the 911 dispatcher that he could be found in her home. When law enforcement arrived at Complainant's home, [Appellant] answered the door and identified himself as Jaime Otero. Complainant subsequently gave police written consent to search her apartment and [Appellant] was placed in handcuffs for the safety of the officers.

A search of the apartment yielded a blue utility knife; a set of keys; four men's rings; four wrapped condoms; $180 in U.S. currency; two cell phones; a chilled and open can of beer; and a black 35mm plastic film container. [Appellant] confirmed all of the items were his with the exception of the film canister. Police opened the plastic film canister and discovered sixteen small individually wrapped packages which appeared to contain a controlled substance. After laboratory examination, it was determined that the substance in the packages was .70 grams of heroin.

On August 27, 2008, following his trial, [Appellant] was sentenced to 22-72 months incarceration by Judge Heckler. On September 4, 2008, trial counsel filed a Motion for Post-Sentence Relief on behalf of [Appellant], which was denied by this [c]ourt. On September 5, 2008, [Appellant] filed a *pro se* appeal to the Superior Court and Motion for New Counsel, without consulting trial counsel and without providing notice to them.

On October 7, 2008, a Petition for the Appointment of Private Counsel for Appeal was filed by the Public Defenders' Office. On October 16, 2008, this [c]ourt denied the Post-Sentence Motion as well as the Petition for Appointment of Private Counsel. On May 4, 2009, [Appellant] filed a Motion for Withdrawal of Appointed Counsel and to Proceed *Pro Se* and the

Superior Court ordered this [c]ourt to conduct a hearing on the matter. A hearing was held wherein this [c]ourt found [Appellant's] waiver of counsel to be knowing and voluntary and [Appellant] was permitted to proceed *pro se*.

On June 30, 2009, [Appellant] filed a Motion for Setting Bail Pending Appeal with the Superior Court and subsequently, the Superior Court directed the Motion to be decided by this [c]ourt. A hearing was held and this [c]ourt denied [Appellant's] Motion for Bail in an Order dated September 15, 2009. [Appellant] appealed the denial of bail and the Superior Court ultimately affirmed this [c]ourt. On December 16, 2010, our Supreme Court denied [Appellant's] Petition for Allowance of Appeal.

On November 14, 2011, [Appellant] filed a *pro se* PCRA petition. On December 14, 2011, this [c]ourt appointed Attorney Stuart Wilder to represent [Appellant]. On August 13, 2012, a hearing was conducted via videoconference on [Appellant's] PCRA petition. In an order dated November 8, 2012, this [c]ourt denied [Appellant] relief under the PCRA. Petitioner did not appeal.

On August 27, 2013, [Appellant] filed his Second PCRA Petition. On September 26, 2013, this [c]ourt entered an Order permitting [Appellant] to file an appeal of the denial of his first PCRA Petition *nunc pro tunc*. On September 30, 2013, [Appellant] filed this Notice of Appeal. On October 17, 2013, [Appellant] filed a Concise Statement of Matters Complained of on Appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

Trial Court Pa.R.A.P. 1925(a) Opinion, January 2, 2014 ("1925(a) Opinion"), at 1-4 (internal record citations and footnotes omitted).

Appellant raises the following question for our review:

Did counsel, who failed to present impeachment evidence by questioning Complainant about her decision to call Appellant's parole officer before she called the police, provide ineffective assistance in violation of the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution?

- 3 -

Appellant's Brief at 4.

In reviewing an order denying PCRA relief, our well-settled standard of review is "to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191-192 (Pa.Super.2013) (internal quotations and citations omitted).

This Court follows the *Pierce*[2] test adopted by our Supreme Court to review PCRA claims of ineffective assistance of counsel:

> When a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. We have interpreted this provision in the PCRA to mean that the petitioner must show: (1) that his claim of counsel's ineffectiveness has merit; (2) that counsel had no reasonable strategic basis for his action or inaction; and (3) that the error of counsel prejudiced the petitioner-i.e., that there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different. We presume that counsel is effective, and it is the burden of Appellant to show otherwise.

*Commonwealth v. duPont*, 860 A.2d 525, 531 (Pa.Super.2004) (internal citations and quotations omitted). The petitioner bears the burden of proving all three prongs of this test. *Commonwealth v. Meadows*, 787

---

[2] *Commonwealth v. Pierce*, 527 A.2d 973 (Pa.1987).

A.2d 312, 319-320 (Pa.2001). "If an appellant fails to prove by a preponderance of the evidence any of the *Pierce* prongs, the Court need not address the remaining prongs of the test." ***Commonwealth v. Fitzgerald***, 979 A.2d 908, 911 (Pa.2010) (citation omitted).

"Matters concerning the examination and cross-examination of witnesses are matters clearly within the province of trial counsel." ***Commonwealth v. Smith***, 17 A.3d 873, 912 (Pa.2011). "Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." ***Commonwealth v. Colavita***, 993 A.2d 874, 887 (Pa.2010) (citation omitted). Otherwise stated, "trial counsel will not be deemed ineffective where he or she has a reasonable basis for his or her actions." ***Commonwealth v. Spotz***, 896 A.2d 1191, 1235 (Pa.2006). "Moreover, the mere fact that this trial strategy ultimately proved unsuccessful does not render it unreasonable." ***Id.*** "If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." ***Commonwealth v. Paolello***, 665 A.2d 439, 454 (Pa.1995).

Appellant argues that trial counsel provided ineffective assistance by failing to cross-examine the complainant about whether she called Appellant's parole officer before calling the police following the incident for

which Appellant was convicted.  ***See*** Appellant's Brief, pp. 11-14.  This claim

lacks merit.

At the PCRA hearing, trial counsel explained his tactical decision to

avoid revealing Appellant's state parolee status to the jury as follows:

> There was an issue that Mr. Otero was currently on state probation and parole.  Although Mr. Otero says DUI is not a big offense, I look at DUI differently.  Most people don't get robbed, most people don't get raped, most people don't get burglarized.  But most people drive on the road and see[] some idiot who run [at] them and cuts them off.  Jurors don't like people with DUI's.  And I thought why should I let them know he's got a bigger criminal record.  All we had to do was admit to the crimen falsi, which is lying to the police officer.
>
> So how I preferred to do it is I'll bring it out on direct.  Mr. Otero, you did this back in 2003, right?  That was a long time ago. Yes.  You pled guilty because you were guilty, right?  Yeah.  You paid the full price for that.
>
> You'll insulate it, you isolate it and you move on.  I don't want to call into attention that he's currently on parole.
>
> . . .
>
> So whether [the complainant] called state parole first before she called the state police, I didn't see it as a real big issue.  I'm thinking, well, could that build her up now?  Could the jury think, gee, look, she was just trying to call the PO not to get him in real trouble with the police.  And you enhance her credibility.
>
> Now, all that's going through my mind as I'm making that decision not to put into fact [sic] he was on state parole.  So I saw no benefit by him admitting he'd under supervision.  Then if he even opens up the door for supervision, I don't know if it opens up what he's on supervision for.  So they could be even thinking there's a bigger issue out there.  So that's why I left it alone.
>
> . . .

But how I felt, I don't want [the jury] to know he's on state parole. State parole is an indication that it's not a county sentence. So they're going to think a bigger offense, and I don't want the jury thinking that. Because this is sort of a, he's saying this, she's saying this, and I don't want to bolster her credibility one iota after we lost bringing [another witness] in to talk about her bias, prejudice and motive for making the story up.

N.T. 8/13/2012, pp. 37-39.

The PCRA court summarized this testimony as follows:

[Trial counsel] testified at [Appellant's] PCRA hearing. He stated that he made a strategic decision not to question Complainant on this issue because he did not want the jury to be prejudiced by the knowledge that [Appellant] was on parole at the time of the incident. [Trial counsel] took a number of other steps prior to and during the trial to ensure the jury would not be aware of [Appellant's] parole status.

1925(a) Opinion, p. 5; *see also* N.T. 8/13/2012, pp. 37-39. The PCRA court then concluded:

This is a legitimate trial tactic with a reasonable basis and therefore cannot be grounds to render counsel ineffective. Further, given the likelihood this information would have prejudiced the jury, [Appellant] has no basis for arguing the outcome of his case would have been different.

*Id.* at 5-6.

We agree with the PCRA court's conclusions, which are supported by the record and free of legal error. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/6/2014